IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| GARY WAGONER,<br><br>Plaintiff,<br><br>v.<br><br>UNIVERSITY OF NORTH CAROLINA AT CHAPEL HILL,<br><br>Defendant. | ) | 1:26cv550 |

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, District Judge.

Before the court is the motion for partial dismissal of the amended complaint by Defendant University of North Carolina at Chapel Hill ("UNC-CH"). (Doc. 12.) Plaintiff Gary Wagoner alleges that Defendants violated his rights under the Americans with Disabilities Act, 42 U.S.C. § 12111 et seq. ("ADA") and the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. ("FMLA"). (Doc. 10.) The motion is fully briefed and ready for decision. For the following reasons, the motion will be granted in part and denied in part.

## I. BACKGROUND

The facts are based on the well-pleaded allegations of the amended complaint, which are accepted as true for purposes of this motion and viewed in the light most favorable to Wagoner as the non-moving party.

UNC-CH is a constituent university of the University of North

Carolina. (Doc. 10 ¶ 3.) Wagoner began working at UNC-CH as a "Maintenance Mechanic III/Journeyman" in 2008, receiving promotions throughout his employment. (Id. ¶ 8.) From 2008 to 2023, Wagoner had not received any negative performance reviews nor been subject to disciplinary action. (Id. ¶ 9.)

In 2023, Wagoner was diagnosed with lateral epicondylitis, otherwise known as "tennis elbow," and scoliosis. (Id. ¶¶ 15-16.) Wagoner informed his supervisor, Joshua Pates, of these diagnoses. (Id.) However, Wagoner did not need any accommodations and could still perform the essential functions of his job. (Id.) Pates nevertheless "began a new pattern of behavior toward Wagoner concerning the terms and conditions of his employment." (Id. ¶ 17.) Pates "changed Wagoner's job duties and altered his evaluation of Wagoner's job performance" after Wagoner disclosed his diagnoses. (Id.)

On November 20, 2023, Pates issued a written warning to Wagoner based on absences from work. (Id. ¶ 19.) However, Wagoner had submitted vacation requests for days he was marked as an "unscheduled absence," and was on sick leave during two of the relevant days. (Id.)

Next, Wagoner's mother was hospitalized from December 13, 2023, to January 3, 2024. (Id. ¶ 20.) Wagoner alleges that he requested FMLA leave "for time that he missed from work to care for his mother," but UNC-CH did not approve the requests. (Id.)

However, he also alleges that he "did receive intermittent leave from January 2, 2024 through July 3, 2024." (Id.)[1]

On March 15, 2024, UNC-CH issued Wagoner a written disciplinary warning for attendance issues. (Id. ¶ 21.) However, Wagoner alleges that he had "received leave time [for the dates missed] pursuant to his FMLA rights." (Id.) In July of 2024, Wagoner received another written disciplinary warning because of attendance issues. (Id. ¶ 22.) Wagoner avers that he "had requested time off from work [for the dates missed] for medical reasons, but UNC-CH did not grant leave to Wagoner for these work absences." (Id.)

On August 20, 2024, Wagoner provided UNC-CH with documentation that he had been diagnosed with sleep apnea. (Id. ¶ 23.) He requested, as an accommodation for his sleep apnea, to be allowed to start work later in the morning. (Id. ¶ 24.) UNC-CH acknowledged Wagoner's request for an accommodation on October 4, 2024. (Id. ¶ 25.) About three weeks later, UNC-CH told Wagoner that he had not provided sufficient documentation of his disability. (Id. ¶ 28.) Wagoner subsequently completed a voluntary self-identification of disability, which UNC-CH acknowledged. (Id. ¶ 29.)

[1] Wagoner does not state what dates he missed during the December 13, 2023 through January 3, 2024 time period. Additionally, he does not state whether he requested the FMLA leave before he missed work to care for his mother.

During the same month Wagoner was communicating with UNC-CH about his sleep apnea, Pates demoted Wagoner and reduced his pay rate. (Id. ¶ 26.) Pates, in conjunction with UNC-CH employee Robin Rudd, based the decision to demote Wagoner "on inaccurate information concerning Wagoner's work attendance, an altered FMLA documentation showing an incorrect date, and medical restrictions that Wagoner had received." (Id.)

Throughout 2025, Wagoner dealt with various ailments which affected his ability to work. Beginning in February 2025, he suffered from depression following the loss of his father-in-law. (Id. ¶ 30.) Diane Dolan-Solo, a licensed clinical social worker, "provided a work note regarding depression" on July 8. (Id. ¶ 34.) In September of 2025, Wagoner was diagnosed with impingement and bursitis in his right shoulder. (Id. ¶ 18.) On September 25, 2025, Wagoner "provided a medical note from Dr. Gregory Summerville" stating that he could return to work "with a lifting restriction of no more than ten . . . pounds." (Id. ¶ 38.)[2] In response, Pates informed Wagoner that "there was no light duty available." (Id.) Additionally, Wagoner provided UNC-CH with multiple doctor's notes stating that he could not work for intermittent periods in 2025. (See id. ¶¶ 35-42.) Wagoner "used

[2] There are two paragraphs numbered "38" in the amended complaint. (See Doc. 10 at 8.) The above citation is to the second numbered paragraph 38.

intermittent FMLA leave" for these work absences, but "did not exhaust his full allotment of available FMLA leave." (Id. ¶ 45.)

"On or about October 2025," UNC-CH told Wagoner "that he was in the ADA interactive process." (Id. ¶ 47.) However, on October 20, 2025, UNC-CH's "authorized agents" Robin Rudd and Tiffany Bailey scheduled a conference "for the express purpose of imposing further discipline on Wagoner and terminating his employment." (Id. ¶ 48.) On November 5, 2025, UNC-CH terminated Wagoner's employment. (Id.)[3]

On February 4, 2026, Wagoner filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Id. ¶ 52; see also Doc. 10-1 at 2.) A right to sue letter was issued on February 11, 2026. (Doc. 10-2.)

The complaint in this action was filed in North Carolina state court on May 12, 2026, alleging failure to accommodate and retaliation under the ADA, along with retaliation and interference with rights under the FMLA. (Doc. 1-3.) UNC-CH timely removed the action to this court on June 15, 2026. (Doc. 1.) Wagoner filed an amended complaint on July 6, adding a claim for hostile work environment under the ADA. (Doc. 10.) UNC-CH now moves to dismiss Wagoner's claims under the ADA, his FMLA interference

[3] On November 6, 2026, Dr. Gregory Summerville "signed a light duty accommodation request stating that Wagoner needed to be on light duty through December 18, 2025, and was unable to lift more than ten pounds." (Id. ¶ 44.) However, Wagoner had been terminated the day prior. (See id. ¶ 48.)

claim, and his FMLA retaliation claim to the extent it relies on conduct that occurred more than two years prior to Wagoner filing this action. (Doc. 12.) The motion is fully briefed and ready for decision.

## II. ANALYSIS

### A. Legal Standards

Federal Rule of Civil Procedure 8(a)(2) provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. (8)(a)(2). A Rule 12(b)(6) motion to dismiss is meant to "test[] the sufficiency of a complaint" and not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In considering a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam), and all reasonable inferences must be drawn in the non-moving party's favor, Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997). However, the court "need not accept as true unwarranted inferences, unreasonable conclusions, or

arguments." Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). Rule 12(b)(6) protects against meritless litigation by requiring sufficient factual allegations "to raise a right to relief above the speculative level" so as to "nudge[] the[] claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570; see Iqbal, 556 U.S. at 678. Thus, mere legal conclusions should not be accepted as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

## B. ADA Failure to Accommodate Claim

### 1. Whether Wagoner's Failure to Accommodate Claim Is Timely

As a preliminary matter, UNC-CH argues that Wagoner's claim for failure to accommodate is untimely. (Doc. 13 at 10.) It asserts that "the failure to accommodate must have occurred between October 7, 2025, and February 4, 2026" because Wagoner filed his EEOC charge on February 4, 2026. (Id. at 11-12.) UNC-CH contends that none of the alleged failures to accommodate occurred within this time period. (Id. at 12-13.)

Wagoner responds with two arguments. First, he contends that the allegations describe "an ongoing pattern of harassment, representing a continuing violation" of the ADA. (Doc. 14 at 15.) Second, he contends that even if the court finds "that there is not a continuing violation" of the ADA, the relevant date for purposes of the timeliness analysis is November 4, 2025, the date

Wagoner first contacted the EEOC. (Id. at 16.) Accordingly, Wagoner argues that since "all actions concerning the failure to accommodate claim" fall within "180 days of November 4, 2025," the failure to accommodate claims are timely. (Id.)

The ADA incorporates Title VII's claim-processing rules. See 42 U.S.C. § 12117(a). Subject to exceptions that are not relevant here, "[i]n order to maintain an action under [the ADA], a plaintiff must file an administrative charge with the EEOC within 180 days of the alleged misconduct." Williams v. Giant Food Inc., 370 F.3d 423, 428 (4th Cir. 2004). Here, Wagoner filed his administrative charge on February 4, 2026. (Doc 10-1 at 2.) Contrary to UNC-CH's contention, 180 days before February 4, 2026 is August 8, 2025, not October 7, 2025. (See Doc. 13 at 11-12.) Accordingly, Wagoner can only proceed with claims based on alleged misconduct that occurred on August 8, 2025 or later. See Williams, 370 F.3d at 428.

Wagoner's argument that his allegations describe an "ongoing act of harassment" is unavailing. The Supreme Court has held that "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002). Accordingly, a plaintiff "can only file a charge to cover discrete acts that 'occurred' within the appropriate time period." Id.

However, if the plaintiff can establish that the defendant's conduct was a "continuing violation," then "the limitations period begins anew with each violation." A Soc'y Without A Name v. Virginia, 655 F.3d 342, 348 (4th Cir. 2011) (quoting Nat'l Adver. Co. v. City of Raleigh, 947 F.2d 1158, 1166 (4th Cir. 1991)). "In general, to establish a continuing violation, the plaintiff must establish that the unconstitutional or illegal act was a fixed and continuing practice." Id. (quoting Nat'l Adver. Co., 947 F.2d at 1167) (alterations adopted). The plaintiff must show that "the illegal act did not occur just once, but rather 'in a series of separate acts, and . . . the same alleged violation was committed at the time of each act[.]'" Id. (quoting Nat'l Adver. Co., 947 F.2d at 1167) (alterations adopted). However, "continual unlawful acts are distinguishable from the continuing ill effects of an original violation because the latter do not constitute a continuing violation." Id.

Here, Wagoner alleges several discrete failures to accommodate, involving several different alleged disabilities. First, he alleges that he requested an accommodation to his work schedule "based upon his sleep apnea diagnosis," which was denied. (Doc. 10 ¶ 24.)[4] Second, Wagoner alleges that Pates told him,

[4] Wagoner also alleges that UNC-CH, through Megan Foxworth, told him that he "had not provided sufficient documentation of a disability under the ADA" but does not say whether his request was ultimately denied. (Id. ¶ 28.)

after he provided Pates with a medical note stating that he had a ten-pound lifting restriction, "that there was no light duty available." (Id. ¶ 38.) Finally, Wagoner alleges that after he was terminated, UNC-CH told him "that he was no longer employed and [therefore] not allowed to request an accommodation." (Id. ¶ 47.) Accordingly, Wagoner's "failure to accommodate claim is not a continuing action. Rather, the claim involves" separate "failure[s] to accommodate on . . . specific date[s][.]" Williams v. N.C. Admin. Off. of the Cts., 364 F. Supp. 3d 596, 603 (E.D.N.C. 2018) (collecting cases); see also Morgan, 536 U.S. at 114-115 (holding that although plaintiff "alleged that he suffered from numerous discriminatory and retaliatory acts from the date he was hired through . . . the date that he was fired," his allegations were "discrete acts" that did not implicate the continuing violation doctrine).

Further, Wagoner's argument that November 4, 2025, is the relevant date for purposes of the timeliness analysis is unavailing. Nowhere in Wagoner's amended complaint or the attached exhibits is a date of November 4, 2025 mentioned. (See generally Docs. 10, 10-1, 10-2.) "It is well-established that parties cannot amend their complaints through briefing." S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC, 713 F.3d 175, 184 (4th Cir. 2013).

Accordingly, UNC-CH's motion to dismiss is granted to the

extent of any failure to accommodate claim arising from incidents before August 8, 2025, and the claims based on those incidents are dismissed.

### 2. Whether Wagoner has Stated a Failure to Accommodate Claim

UNC-CH further contends that Wagoner's failure to accommodate claim should be dismissed because he does not allege that he is a qualified individual under the ADA. (Doc. 13 at 14.) UNC-CH argues that Wagoner has not alleged that "he could perform the essential functions of his position with or without reasonable accommodation." (Id. (quoting Chisholm v. Mountaire Farms of N.C. Corp., 629 F. Supp. 3d 368, 375 (M.D.N.C. 2022)).)

Wagoner does not directly respond to UNC-CH's contention. Rather, he observes that he "had consistently performed the essential functions of his job at all previous times and had not requested [sic]." (Doc. 14 at 15.) Further, he points to the amended complaint's allegation that "Wagoner maintained that he would be able to perform his job with reasonable and appropriate accommodations for his shoulder on a long-term basis, and sleep apnea on a short-term basis." (Id. at 14 (citing Doc. 10 ¶ 46).)

In order to establish a prima facie case for failure to accommodate, a plaintiff must show that (1) he was an individual who had a disability within the meaning of the ADA; (2) the employer had notice of the disability; (3) with reasonable accommodation, he could perform the essential functions of the

position; and (4) the employer refused to make reasonable accommodations. Wilson v. Dollar Gen. Corp., 717 F.3d 337, 345 (4th Cir. 2013). UNC-CH only challenges the third element. (See Doc. 13 at 14-15.)

"Under the ADA, only persons who are 'qualified' for the job in question may state a claim for discrimination." Tyndall v. Nat'l Educ. Centers, Inc. of California, 31 F.3d 209, 212 (4th Cir. 1994). The ADA defines a "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). "To allege that he was qualified for his position, the plaintiff must assert facts suggesting that: '(1) he could "perform the essential functions of the job" or (2) if not, whether "any reasonable accommodation by [his] employer would enable [him] to perform those functions."'" Bailey v. Klockner Pentaplast of Am., Inc., No. 7:17-CV-00242, 2017 WL 4081876, at *1 (W.D. Va. Aug. 4, 2017) (quoting Lamb v. Qualex, 33 F. App'x. 49, 56 (4th Cir. 2002) (unpublished opinion)).[5]

[5] In determining whether Wagoner made this showing, the court will rely only on incidents of alleged failures to accommodate that occurred between August 8, 2025, and February 4, 2026, because claims accruing before August 8, 2025 would be administratively barred. See supra; see also Chan v. Montgomery Cnty. Md., No. 8:12-CV-01735-AW, 2013 WL 1773574, at *2 (D. Md. Apr. 24, 2013) (declining to consider administratively barred allegations when determining whether plaintiff pleaded a prima facie case).

Here, Wagoner has alleged that he "had consistently performed the essential functions of his job" up until 2023. (Doc. 10 ¶ 11.) Moreover, he describes the essential functions of the "Lead Exterior Roofer and/or Facilities Maintenance Technician" role. (Id. ¶ 12.) However, by the relevant time for purposes of his claim, Wagoner had been demoted to a "Maintenance Mechanic III," (id. ¶ 26), a role with different job duties. (Compare id. ¶ 12 (job duties of "Lead Exterior Roofer and/or Facilities Maintenance Technician") with id. ¶ 27 (job duties of Maintenance Mechanic III).)

Wagoner alleges that the essential functions of the Maintenance Mechanic III role "included, but were not limited to" (1) "physical completion of jobs in the field" and (2) "complet[ing] work as assigned by his supervisors[.]" (Id. ¶ 27 (emphasis added).) Accordingly, Wagoner has pleaded some, but not all, of the essential functions of his role. Without pleading what the essential functions of his role were, the court has no framework for determining whether his proposed accommodations were "reasonable accommodations." Cf. Rubino v. New Acton Mobile Indus. LLC, 44 F. Supp. 3d 616, 623 (D. Md. 2014) (holding that plaintiff failed to state failure to accommodate claim when it was "not possible to tell from the [a]mended [c]omplaint what the [p]laintiff's job involves.").

Moreover, Wagoner's only allegations related to his ability

to perform the essential functions of the Maintenance Mechanic III job are that (1) "Wagoner maintained that he would be able to perform his job with reasonable and appropriate accommodations for his shoulder on a long-term basis, and sleep apnea on a short-term basis" and (2) that he "was able to perform the essential functions of his job with a reasonable accommodation." (Id. ¶¶ 46, 58.) It appears from the amended complaint that the requested accommodation was a (1) "a later starting time in the morning," as an accommodation for his sleep apnea and (2) a "light duty accommodation request" where Wagoner would not lift more than ten pounds. (Id. ¶¶ 24, 38, 44.)[6]

Wagoner has only made conclusory statements that his proposed accommodations would allow him to perform the unknown essential functions of his role. Accordingly, he has not plausibly alleged facts creating a reasonable inference that he was qualified for the position. See Wood v. Bristol Virginia Util. Auth., 661 F. Supp. 3d 538, 549 (W.D. Va. 2023) (dismissing failure to accommodate claim because plaintiff did "not allege[] facts showing that he could perform the essential functions of his job with reasonable accommodations.").[7]

---

[6] Any failure to accommodate claim based on Wagoner's request for "a later starting time in the morning" is time-barred. However, the court considers the request in determining whether Wagoner has sufficiently alleged that he was a "qualified individual."

[7] Wagoner alleges that Pates told him, in response to his accommodation request, that there was "no light duty available." (Doc. 10 ¶ 38.)

Accordingly, Wagoner's failure to accommodate claim will be dismissed but, because it is subject to cure, it will be dismissed without prejudice.

**C. ADA Retaliation Claim**

**1. Whether Wagoner's Retaliation Claim is Timely**

UNC-CH contends that Wagoner's claim for retaliation under the ADA is untimely. (Doc. 13 at 15.) It argues that "any alleged act of retaliation must have occurred 180 days before February 4, 2026," the day Wagoner filed his EEOC charge. (Id.) UNC-CH contends that all of "the challenged conduct [in this case] occurred about a year before October 7, 2025." (Id. at 16.)

Wagoner counters that he "has alleged a causal and temporal connection between each exercise of protected activity, and subsequent adverse action taken by UNC-CH." (Doc. 14 at 19.) Further, he reiterates his argument that "even if the [c]ourt finds that there is not a continuing violation with respect to [his] retaliation claim, Wagoner is still entitled to use the November 4, 2025 date for an informal filing of an EEOC charge, and include actions that are within 180 days of" that date. (Id.)

---

While a reasonable accommodation can include moving an employee to a vacant position, "[t]he ADA does not require employers to create new positions to accommodate their employees with disabilities." Perdue v. Sanofi-Aventis U.S., LLC, 999 F.3d 954, 961-62 (4th Cir. 2021). Because Wagoner has not pleaded what the essential functions of his job are – or whether "light duty" was a vacant position at UNC-CH – the court has no frame of reference for whether his proposed lifting restriction was a "reasonable accommodation" or whether "light duty" would be a "new" position.

As stated above, "[i]n order to maintain an action under [the ADA], a plaintiff must file an administrative charge with the EEOC within 180 days of the alleged misconduct." Williams, 370 F.3d at 428. Here, Wagoner filed his administrative charge on February 4, 2026. (Doc. 10-1 at 2.) And as noted, contrary to UNC-CH's contention, 180 days before February 4, 2026 is August 8, 2025. (See Doc. 13 at 16.) For the same reasons as explained above, Wagoner does not plead a "continuing violation" of the ADA, nor is he entitled to use November 4, 2025 as the relevant date for timeliness analysis. See supra; see also Morgan, 536 U.S. at 110 ("A discrete retaliatory . . . act 'occurred' on the day that it 'happened.'"). Accordingly, UNC-CH's motion to dismiss Wagoner's retaliation claim will be granted to the extent that any claim for retaliation accruing before August 8, 2025, will be dismissed.

### 2. Whether Wagoner has Stated a Claim for Retaliation

UNC-CH further argues that Wagoner's retaliation claim should be dismissed for two additional reasons. First, UNC-CH contends that "Wagoner's allegation that UNC-CH did not engage in the interactive process is insufficient to state a claim because it is not an adverse action." (Doc. 13 at 16.) Second, UNC-CH asserts that "Wagoner has not alleged a causal connection between his requests for accommodation and his termination." (Id. at 18.)

Wagoner does not directly respond to these arguments. However, he contends that the alleged "unsubstantiated

disciplinary action, poor performance reviews, and eventual termination" constituted retaliation. (Doc. 14 at 19.)

"To establish a prima facie retaliation claim under the ADA, a plaintiff must prove (1) he engaged in protected conduct, (2) he suffered an adverse action, and (3) a causal link exists between the protected conduct and the adverse action." Reynolds v. Am. Nat'l Red Cross, 701 F.3d 143, 154 (4th Cir. 2012).

Here, one adverse employment action occurred after August 8, 2025: Wagoner's termination. (See Doc. 10 ¶ 48.) Beginning with the first element, requesting an accommodation is a protected activity under the ADA. See Jacobs v. N.C. Admin. Off. of the Cts., 780 F.3d 562, 577 (4th Cir. 2015). Wagoner alleges that he submitted numerous doctor's notes in late 2025 and requested an accommodation for his impingement and bursitis on September 10, 2025. (Doc. 10 ¶¶ 18, 34-38, 42.) Accordingly, Wagoner has pleaded that he engaged in a protected activity by making requests for accommodation.

For the second element, "[a]n adverse employment action is a discriminatory act that 'adversely affects the terms, conditions, or benefits of the plaintiff's employment.'" Holland v. Washington Homes, Inc., 487 F.3d 208, 219 (4th Cir. 2007) (quoting James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 375 (4th Cir. 2004)) (alterations adopted). "'Discharge' from employment is one form of adverse employment action." Roberts v. Glenn Indus. Grp., Inc.,

998 F.3d 111, 123 (4th Cir. 2021); see also Laughlin v. Metro. Washington Airports Auth., 149 F.3d 253, 258 (4th Cir. 1998). Because Wagoner pleads that he was terminated, he has pleaded an adverse employment action. (See Doc. 10 ¶ 48.)

For the final element, UNC-CH argues that Wagoner has not pleaded a causal connection because he has not alleged that UNC-CH had knowledge of Wagoner's protected activity before his termination. (Doc. 13 at 18.) "A plaintiff claiming retaliation must establish that the employer had knowledge of the protected activity in order for [the employer's] subsequent adverse employment actions to be retaliatory." Shields v. Fed. Exp. Corp., 120 F. App'x 956, 962 (4th Cir. 2005) (citing Luckie v. Ameritech Corp., 389 F.3d 708, 715 (7th Cir. 2004)).[8]

Here, Wagoner alleges that his initial request for a lifting restriction was rejected by Pates, who "informed [Wagoner] that there was no light duty available." (Doc. 10 ¶ 38.) He also alleges that he "was told he should apply for disability and leave his job" by an unnamed individual at an unknown time. (Doc. 10 ¶ 46.) In October of 2025, UNC-CH "sent Wagoner an acknowledgement that he was in the ADA interactive process." (Id. ¶ 43.) That same month, Robin Rudd and Tiffany Bailey scheduled a conference

---

[8] Unpublished opinions of the Fourth Circuit are not precedential but are cited herein for their persuasive, but not controlling, authority. See Collins v. Pond Creek Mining Co., 468 F.3d 213, 219 (4th Cir. 2006).

"for the express purpose of . . . terminating [Wagoner's] employment." (Id. ¶ 48.) In November of 2025, "UNC-CH terminated Wagoner's employment." (Id.)

While Wagoner pleads that Pates and Rudd "were aware of Wagoner's accommodation requests," (Id. ¶ 32), he "does not actually articulate who was the 'decisionmaker' responsible for his termination and does not allege that the responsible individual even knew" of his accommodation request. Jones v. HCA, 16 F. Supp. 3d 622, 635 (E.D. Va. 2014); (see Doc. 10 ¶ 48 ("UNC-CH terminated Wagoner's employment.").) Wagoner's allegation that an entity as a whole retaliated against him is "insufficient to establish a causal link between [his] protected activity and any alleged adverse action." Boudreaux v. Booz Allen Hamilton, Inc., No. CV 3:25-CV-00051, 2026 WL 788952, at *9 (W.D. Va. Mar. 20, 2026) (dismissing claim when plaintiff "only vaguely allege[d]" that "'Defendant' . . . retaliated against her"); see also Davenport v. Maryland, 38 F. Supp. 3d 679, 689-90 (D. Md. 2014) (dismissing retaliation claim when plaintiff did not "identify the person or persons who committed [the] retaliatory acts").

Absent any allegation of who terminated him, Wagoner does not adequately plead a causal connection between his protected activity and the adverse employment action. Accordingly, Wagoner's retaliation claim will be dismissed, although the dismissal will be without prejudice in the event Wagoner can cure

the deficiency. See Misel v. Green Tree Servicing, LLC, 782 F. Supp. 2d 171, 178 (E.D.N.C. 2011) ("Generally, where a defect in the complaint is curable, the court should grant the dismissal without prejudice.").

**D. Hostile Work Environment Claim**

UNC-CH contends that Wagoner's hostile work environment claim should be dismissed for failure to exhaust his administrative remedies. (Doc. 13 at 19.) UNC-CH asserts that Wagoner's EEOC charge describes "what would be considered discrete acts of discrimination" rather than "harassment." (Id. at 20.)

Wagoner counters that, considering "the totality of events and circumstances," he sufficiently exhausted his administrative remedies. (Doc. 14 at 24.) He contends that "a reasonable investigation" of his EEOC complaint would have covered his hostile work environment claim. (Id. at 23.)

Under the ADA, "a plaintiff must exhaust his administrative remedies by filing a charge with the EEOC before pursuing a suit in federal court." Sydnor v. Fairfax Cnty., Va., 681 F.3d 591, 593 (4th Cir. 2012) (citing 42 U.S.C. § 2000e-5(b), (f)(1)). "An individual cannot bring suit until he has exhausted the administrative process." Chacko v. Patuxent Inst., 429 F.3d 505, 509 (4th Cir. 2005). The Fourth Circuit has held that "the 'scope of the plaintiff's right to file a federal lawsuit is determined by the [EEOC] charge's contents.'" Sydnor, 681 F.3d at 593

(quoting Jones v. Calvert Grp., Ltd., 551 F.3d 297, 300 (4th Cir. 2009)).

"Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent [ADA] lawsuit." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996). However, courts do not "require untrained parties to provide a detailed essay to the EEOC in order to exhaust their administrative remedies." Sydnor, 681 F.3d at 594. "[S]o long as 'a plaintiff's claims in [his] judicial complaint are reasonably related to [his] EEOC charge and can be expected to follow from a reasonable administrative investigation,' [he] 'may advance such claims in her subsequent civil suit.'" Id. (quoting Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir. 2000)).

Here, Wagoner's EEOC charge asserts that he was discriminated against based on "disability" and faced retaliation. (Doc. 10-1 at 1.) His charge describes a back injury, sleep apnea, and a shoulder injury. (Id.) He also states that UNC-CH "only granted [him] FMLA Intermitted [sic] time forward" and a "Payroll Specialist took away time [he] had to show he had no time and was taking time off without available time in order to make the writeups look legit." (Id.) He then concludes that he "was discriminated against due to [his] covered disability[.]" (Id.)

However, nowhere in the EEOC charge does Wagoner allege that he was subject to a hostile work environment, nor does he describe any conduct that would put the EEOC on notice that Wagoner's work environment was "permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65, 67 (1986)) (internal citations omitted). "Administrative investigation of" Wagoner's hostile work environment claim "could not reasonably be expected to occur in light of" Wagoner's EEOC charge alleging that he had difficulties securing FMLA leave. Bryant v. Bell Atl. Maryland, Inc., 288 F.3d 124, 133 (4th Cir. 2002); see Byington v. NBRS Fin. Bank, 903 F. Supp. 2d 342, 351 (D. Md. 2012) (holding that a generalized allegation of "harassment" in administrative charge was insufficient to exhaust administrative remedies for hostile work environment claim); cf. Griffin v. Holder, 972 F. Supp. 2d 827, 845 (D.S.C. 2013) (plaintiff exhausted administrative remedies when EEOC charge stated that she worked in a "hostile work environment").

In sum, Wagoner has not exhausted his administrative remedies

for his hostile work environment claim.[9] Therefore, UNC-CH's motion to dismiss Wagoner's hostile work environment claim will be granted, and the claim will be dismissed.

**E. FMLA Claims**

**1. Whether the Relevant Statute of Limitations Is Two or Three Years**

Under the FMLA, actions must be brought "not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought." 29 U.S.C. § 2617(c)(1). However, if an action is "brought for a willful violation[,]" then the action "may be brought within 3 years of the date of the last event constituting the alleged violation for which such action is brought." 29 U.S.C. § 2617(c)(2). The parties dispute whether the complaint alleges a "willful violation."

UNC-CH argues that Wagoner's FMLA claim is subject to the two-year statute of limitations, such that any claim based on incidents two years prior to Wagoner bringing this action should be dismissed. (Doc. 13 at 25.) UNC-CH contends that "there are no factual allegations of willful conduct" beyond a "conclusory statement that UNC-CH's actions were willful." (Id. at 25 n.6.) UNC-CH describes the complaint as "at best" alleging a "clerical

[9] Because the court concludes that Wagoner has not exhausted his administrative remedies for his hostile work environment claim, the court does not reach UNC-CH's arguments that Wagoner has not pleaded the elements of a hostile work environment claim.

error" that "does not indicate willfulness or a reckless disregard for FMLA compliance." (Doc. 15 at 15.)[10]

Wagoner counters that the complaint demonstrates "voluntary, deliberate, and intentional conduct" by UNC-CH. (Doc. 14 at 26.) Wagoner points to seven representative allegations, which he contends establish "willfulness." (Id. at 25.)

"A willful violation is shown when an employer knew or showed reckless disregard regarding whether its conduct was prohibited," meaning more than "mere negligence." Settle v. S.W. Rodgers Co., 182 F.3d 909 (unpublished table decision) (4th Cir. 1999) (citing McLaughlin v. Richland Shoe Co., 486 U.S. 128, 132-35 (1988)); see also Shipton v. Balt. Gas & Elec. Co., 109 F.4th 701, 709 (4th Cir. 2024), cert. denied, 145 S. Ct. 774 (2024).

Beginning with Wagoner's FMLA interference claim, Wagner "requested FMLA leave for time that he missed [in December 2023 through January 2024] from work to care for his mother, but such requests were not approved by UNC-CH." (Doc. 10 ¶ 20.)[11] However,

[10] UNC-CH challenges only Wagoner's retaliation claim on timeliness grounds. (Doc. 13 at 27-28.) It contends that, for the same reasons as the FMLA interference claim, "any alleged retaliatory conduct that occurred before May 12, 2024 is untimely." (Id. at 27.)

[11] It is unclear from Wagoner's complaint whether requested FMLA leave before missing work or after he had already missed work. (See Doc. 10 ¶ 20.) To the extent he requested leave retroactively, "[a]n employee may not retroactively invoke his or her entitlement to family and medical leave" unless "an employee and his or her personal representative are physically or mentally incapable of invoking the employee's entitlement to FMLA leave during the entire period in which the employee is absent from work[.]" 5 C.F.R. § 630.1203(b).

Wagoner also alleges that he "did receive intermittent leave from January 2, 2024 through July 3, 2024," (id.), and was able to "use[] intermittent FMLA leave based upon the multiple medical conditions during" September through December of 2025, (id. ¶ 45). "Willful violations of the FMLA generally do not occur when an employee's request for FMLA leave has been granted." Polk v. Mecklenburg Cnty., No. 320CV00483FDWDCK, 2021 WL 2636015, at *9 (W.D.N.C. June 25, 2021).

Wagoner also alleges that UNC-CH "relied on inaccurate information" including "an altered FMLA documentation," and had "made improper adjustments to Wagoner's personnel records showing that he had exhausted FMLA leave." (Doc. 10 ¶¶ 26, 33.) "Mere improper calculation of leave does not amount to willfulness." Avent v. Kraft Foods Glob., Inc., No. 3:11-CV-37, 2012 WL 3555378, at *5 (E.D. Va. Aug. 16, 2012); see also Davis v. Navy Fed. Credit Union, No. 1:11CV01282 JCC/TCB, 2012 WL 948428, at *5 (E.D. Va. Mar. 20, 2012), aff'd, 474 F. App'x 398 (4th Cir. 2012) (allegations that, inter alia, defendant did not accurately track plaintiff's use of FMLA leave did not establish willfulness).

Therefore, the court concludes that the relevant statute of limitations for Wagoner's FMLA interference claim is two years. Accordingly, any FMLA interference claims accruing before May 12, 2024, are dismissed.

As for Wagoner's FMLA retaliation claim, Wagoner points to

representative allegations from the amended complaint while arguing that "[m]ultiple courts have found that retaliation includes willfulness." (Doc. 14 at 24-25.) However, most of Wagoner's representative allegations do not involve UNC-CH retaliating against Wagoner for exercising his FMLA rights. For example, Wagoner points to his allegation that "Pates changed Wagoner's job duties and altered his evaluation of Wagoner's job performance[.]" (Id. at 25 (citing Doc. 10 ¶ 17).) However, paragraph 17 of the amended complaint alleges that Pates made these changes after Wagoner disclosed his medical conditions, not after Wagoner took FMLA leave. (See Doc. 10 ¶¶ 15-17.) Likewise, Wagoner points to his allegation that Pates issued a written warning to him based off purported absences from work. (Doc. 14 at 25 (citing Doc. 10 ¶ 19).) However, Wagoner does not allege that he took FMLA leave on the days he was absent; rather, he took sick leave and "submitted vacation requests" for the days he was absent from work. (Doc. 10 ¶ 19.)

However, Wagoner does allege that in July of 2024, Pates issued a written disciplinary warning to Wagoner "based upon 'attendance issues,'" notwithstanding the fact that "Wagoner had received leave time [for the days missed] pursuant to his FMLA rights." (Doc. 10 ¶ 21.) He then alleges that Pates "took these

actions intentionally and deliberately." (Id.)[12]

Courts have found that "retaliation inherently includes willfulness," meaning that FMLA retaliation claims are generally subject to the FMLA's three-year statute of limitations. Bellamy v. E. Carolina Univ., No. 4:22-CV-115-D-BM, 2024 WL 5150670, at *6 (E.D.N.C. Nov. 20, 2024), report and recommendation adopted, No. 4:22-CV-115-D, 2024 WL 5147014 (E.D.N.C. Dec. 17, 2024); see also Jones v. Enter. Holdings, Inc., No. 2:25-CV-1519, 2026 WL 1505968, at *5 (S.D. Ohio May 29, 2026); Schaneville v. Publix Super Mkts., Inc., No. 3:20-CV-01038, 2021 WL 5054106, at *7 (M.D. Tenn. Nov. 1, 2021). Accordingly, whether or not the three-year statute of limitations applies depends on whether Wagoner has stated a claim for retaliation. See Settle v. S.W. Rodgers, Co., 998 F. Supp. 657, 664 (E.D. Va. 1998), aff'd, 182 F.3d 909 ("[W]here . . . a plaintiff sufficiently alleges facts supporting the claimed violation of the FMLA, a general averment as to willfulness should be sufficient to trigger the three-year limitations period.").

[12] While "a disciplinary warning, without more, is not an adverse employment action" for purposes of retaliation, Sullivan v. Wake Forest Baptist Med. Ctr., No. 1:20CV281, 2022 WL 1082634, at *6 (M.D.N.C. Apr. 11, 2022), Wagoner alleges that UNC-CH relied on the disciplinary warning "in support of its subsequent action in demoting Wagoner, and later [in] terminating his employment." (Doc. 10 ¶ 21.) This is sufficient to constitute an adverse employment action. Cf. Newman v. Giant Food, Inc., 187 F. Supp. 2d 524, 528-29 (D. Md. 2002), aff'd sub nom. Skipper v. Giant Food Inc., 68 F. App'x 393 (4th Cir. 2003) (holding that a disciplinary warning was insufficient to constitute adverse employment action when there was not "evidence that the warning could lead to further disciplinary action, such as termination").

Here, Wagoner has made a "general averment as to willfulness," Settle, 998 F. Supp. at 664, by alleging that UNC-CH, through Pates, "took these actions [in disciplining him] intentionally and deliberately." (Doc. 10 ¶ 21.) Accordingly, the question of whether the three-year statute of limitations applies depends on whether Wagoner "sufficiently alleges facts supporting the claimed violation of the FMLA." Settle, 998 F. Supp. at 664. However, UNC-CH has not moved to dismiss Wagoner's FMLA retaliation claim on its merits; rather, UNC-CH only moves to dismiss the claim on timeliness grounds. (See Doc. 13 at 27-28.)

Therefore, UNC-CH has failed to demonstrate that at this juncture that the three-year statute of limitations does not apply to Wagoner's claims. See Clary v. Raville, No. PWG 8:20-CV-02521, 2021 WL 4169489, at *4 (D. Md. Sept. 14, 2021) (concluding that three-year statute of limitations applied and denying motion to dismiss FMLA retaliation claim on timeliness grounds when plaintiff made "general averments of willfulness"). Accordingly, UNC-CH's motion to dismiss Wagoner's FMLA retaliation claim on the ground that the two-year statute of limitations is applicable to that claim is denied.

### 2. Whether Wagoner has Stated an FMLA Interference Claim

UNC-CH contends that Wagoner's FMLA interference claim should be dismissed because he "has not alleged that UNC-CH interfered

with his ability to obtain the FMLA benefit[s] he was entitled to receive." (Doc. 13 at 26.) UNC-CH argues that the complaint demonstrates Wagoner was still able to obtain leave in October and November of 2025. (Id. at 27.) Wagoner does not directly respond to this argument.

To state a claim for FMLA interference, an employee must allege that (1) he is entitled to an FMLA benefit; (2) his employer interfered with the provision on that benefit; and (3) that interference caused harm. Roberts v. Gestamp W. Va., LLC, 45 F.4th 726, 732 (4th Cir. 2022). Interference with an employee's FMLA benefits includes "refusing to authorize FMLA leave, discouraging an employee from using such leave, and manipulation to avoid responsibilities under the FMLA." Quintana v. City of Alexandria, 692 F. App'x 122, 126 (4th Cir. 2017) (citing 29 C.F.R. § 825.220(b)).

Wagoner's allegations related to FMLA leave arising after May 12, 2024, are as follows: in October 2024, UNC-CH relied on "an altered FMLA documentation showing an incorrect date" to demote him and reduce his pay. (Doc. 10 ¶ 26.) Likewise, from July to October of 2025, UNC-CH "made improper adjustments to Wagoner's personnel records showing that he had exhausted FMLA leave and other benefits, which later served as a pretext for the termination of Wagoner's employment." (Id. ¶ 33.) Nevertheless, Wagoner was able to "use[] intermittent FMLA leave" during this time but "did

not exhaust his full allotment of available FMLA leave." (Id. ¶ 45.) Finally, Wagoner was terminated while he was on FMLA leave. (Id. ¶ 48.)

These allegations fall short of pleading an FMLA interference claim. Wagoner alleges that he was still able to use "intermittent FMLA leave" during the relevant time period. (Id. ¶ 45.) "[F]or an interference claim to be viable, the plaintiff must show that FMLA benefits were actually withheld." Ross v. Gilhuly, 755 F.3d 185, 192 (3d Cir. 2014); accord Stairwalt v. TIAA, No. 3:17-CV-00220-MOC-DSC, 2018 WL 3745833, at *3 (W.D.N.C. Aug. 7, 2018). Given that Wagoner has not "show[n] that [he] was denied requested FMLA leave to which [he] was entitled, [his] interference claim must fail" on this basis. Westbrooks v. Balt. Cnty., No. CV SAG-18-1777, 2019 WL 3935355, at *7 (D. Md. Aug. 20, 2019); see also Stairwalt, 2018 WL 3745833, at *3 (plaintiff who was "allowed intermittent and continuous leave, as instructed by his doctors," did not state an FMLA interference claim). Accordingly, UNC-CH's motion to dismiss Wagoner's FMLA interference claim will be granted and the claim will be dismissed.[13]

---

[13] To the extent Wagoner bases his FMLA interference claim on the disciplinary actions taken against him because of "improper adjustments" to his FMLA leave, these are best seen as FMLA retaliation claims. See Downs v. Winchester Med. Ctr., 21 F. Supp. 3d 615, 617-19 (W.D. Va. 2014) (holding that plaintiff's claim that adverse employment action was taken because plaintiff took FMLA leave is not an FMLA interference claim, but instead a FMLA retaliation claim). UNC-CH does not seek to dismiss Wagoner's FMLA retaliation claims accruing after May 2024. (See Doc. 13 at 28 ("Wagoner's FMLA retaliation claim should be dismissed to the

## III. CONCLUSION

For the reasons stated,

IT IS ORDERED that UNC-CH's motion for partial dismissal of the amended complaint (Doc. 12) is GRANTED IN PART and DENIED IN PART as follows:

1. Any failure to accommodate claim arising from incidents before August 8, 2025, is DISMISSED, and any remaining failure to accommodate claim is DISMISSED WITHOUT PREJUDICE.
2. Any claim for retaliation accruing before August 8, 2025, is DISMISSED, and any remaining retaliation claim is DISMISSED WITHOUT PREJUDICE.
3. Wagoner's hostile work environment is DISMISSED.
4. Wagoner's FMLA interference claim is DISMISSED.
5. In all other respects, the motion to dismiss is DENIED.

/s/ Thomas D. Schroeder
United States District Judge

November 16, 2026

extent it relies on conduct that occurred before May 2024").) As a result, the court does not address the allegations that UNC-CH used improper FMLA calculations to demote and terminate Wagoner.